■ In the Matter of BERNARDO TOBON, Petitioner, v MARY JO BANE, as Commissioner of the New York State Department of Social Services, Respondent. [596 NYS2d 495] —Levine, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which excluded petitioner from participation in the Medicaid program for five years and required restitution for overpayments.

Petitioner, a physician in private practice licensed in this State, was enrolled as a Medicaid provider and applied for reenrollment in 1988 (see, 18 NYCRR 504.10). As part of the reenrollment process, petitioner submitted 10 patients' files to respondent. After reviewing the files, respondent terminated petitioner's status in the Medicaid program without cause in November 1988 (18 NYCRR 504.7 [a]). Petitioner unsuccessfully challenged that termination (Matter of Tobon v New York State Dept. of Social Servs., 142 Misc 2d 310). Based on review of petitioner's 10 files, respondent referred them to the Office of Professional Medical Conduct in the Department of

---

* Respondents have not pursued their cross appeal.

Health (hereinafter OPMC) for investigation of possible professional misconduct.

Because petitioner was terminated from the Medicaid program without cause and therefore without any agency determination of "unacceptable practices", petitioner retained the right to order prescriptions and laboratory tests for Medicaid patients subject to Medicaid reimbursement (18 NYCRR 504.7 [a]; 515.2, 515.5 [b]). In February 1990, respondent began an audit for the period June 1988 to July 1989 of petitioner's Medicaid patient records, and subsequently requested review of a randomly selected sample of 25 Medicaid patient files for which petitioner had ordered services, which third-party services were paid for by the Medicaid program during the audit period. On advice of counsel, petitioner refused to provide the requested records because respondent declined to provide assurance that the requested files would not be turned over to OPMC.

Respondent issued a "notice of proposed agency action" in February 1990 advising petitioner that a determination had been made, based on his refusal to turn over the requested files—an "unacceptable practice", to exclude him from the Medicaid program for two years; to disallow, and seek restitution for, all services he ordered during the audit period; and that petitioner had 30 days to respond. The parties dispute whether petitioner timely responded. Respondent issued a "notice of agency action" accompanied with a final audit report in September 1990, notifying petitioner that he was excluded from the Medicaid program for five years and demanding full restitution (i.e., $85,737 plus interest for the 6,249 services ordered by petitioner during the audit period, all of which were disallowed), based on the finding that petitioner had engaged in unacceptable practices (18 NYCRR 515.2) by failing to maintain and furnish upon request medical records for the required six years (see, 18 NYCRR 504.3, 517.3 [b]; 540.7 [a] [8]), failing to maintain records and comply with other requirements (see, 18 NYCRR 515.2 [b] [6]), and failing to respond to the notice of proposed agency action. Petitioner's right to order or prescribe Medicaid services was terminated for the duration of the exclusion period (see, 18 NYCRR 515.5 [c]).

At petitioner's request an administrative hearing was held in January 1991, following which the Administrative Law Judge (hereinafter ALJ) (1) determined that petitioner's refusal to furnish the 25 charts was not justified and was in violation of several regulations (see, 18 NYCRR 504.3 [a], [g];

517.3 [b]; 518.3 [b]; 540.7 [a] [8]) and therefore constituted unacceptable practices and unacceptable recordkeeping *(see,* 18 NYCRR 515.2 [a] [1]; [b] [6]), and (2) found meritless petitioner's contention that respondent was without jurisdiction to impose sanctions or obtain restitution because he was no longer an enrolled provider at the time of the audit. Accordingly, the ALJ sustained the sanction of five years' exclusion and restitution imposed by respondent against petitioner. Petitioner commenced this CPLR article 78 proceeding *to annul the determination,* which was transferred to this Court.

As an initial matter, petitioner contends that because the audit period encompassed eight months in which he was not an enrolled participating provider, respondent had no jurisdiction to audit his medical records, sanction him or seek restitution for Medicaid services provided or ordered subsequent to his termination without cause in November 1988. However, it does not appear from the record that petitioner ever raised this jurisdictional issue with respondent prior to the administrative hearing as required under the regulations *(see,* 18 NYCRR 519.18 [a]). In any event, petitioner's contention is incorrect because respondent's regulations clearly permit imposition of sanctions, including exclusion and restitution, against any *"person* [who] has engaged in an unacceptable practice" (18 NYCRR 515.3 [a] [emphasis supplied]; *see,* 18 NYCRR 518.3 [b]; 515.1 [a] [1]; 515.2 [a]), and the term "person" includes "natural persons" and is not limited to enrolled providers (18 NYCRR 504.1 [d] [17]). As the ALJ aptly noted, "unacceptable practices are committed by persons, not providers" and "[i]t is committing unacceptable practices or causing or receiving overpayments that gives rise to the Department's authority to sanction, not provider enrollment status".* Additionally, under the regulations, when petitioner enrolled as a provider, he agreed to prepare and maintain all records necessary to disclose the nature and extent of services rendered and to furnish such records upon request for a period of six years from the date of care *(see,* 18 NYCRR 504.3 [a]; 540.7 [a] [8]) and to permit audits *(see,* 18 NYCRR 504.3 [g]) and abide by all regulations *(see,* 18 NYCRR 504.3 [i]), thereby undertaking a continuing obligation which did not cease merely because his enrollments status terminated.

---

* The amendment to 18 NYCRR 504.1 (d) (19), effective June 17, 1992, while requiring enrollment in certain situations, did not deprive respondent of its preexisting authority to audit and sanction nonenrolled providers.

Petitioner also argues that respondent had no authority to regulate or review his practice of medicine and treatment, or the medical necessity of services and prescriptions he ordered. However, as the ALJ correctly noted, petitioner confuses the right to provide medical services with the right to have these services paid for by Medicaid. Respondent has here only determined that Medicaid will not pay bills to which petitioner's practice gives rise (see, 18 NYCRR 515.5).

We also conclude that the determination that petitioner committed unacceptable practices is supported by substantial record evidence. Petitioner was under a duty to maintain medical records for a period of six years and to furnish them upon request to respondent for audit and review (see, 18 NYCRR 504.3 [a]; 517.3 [b]). Petitioner's complete refusal to provide the 25 randomly selected Medicaid patient records violated that duty and constituted an unacceptable practice (18 NYCRR 515.2). The burden was on petitioner to show that respondent's determination was incorrect (see, 18 NYCRR 519.18 [d] [1]). Medical services are deemed medically unnecessary unless they are fully documented in a patient's medical records (18 NYCRR 518.3 [b]), and petitioner's refusal to furnish the randomly selected records requested provides substantial evidence of unacceptable practices and inadequate recordkeeping under the regulations (see, 18 NYCRR 515.2 [a] [1], [6]; see also, Matter of Siddiqui v Commissioner, N. Y. State Dept. of Social Servs., 170 AD2d 922, 923, appeal dismissed 77 NY2d 989; Matter of Metzies Shoe Brooklyn N. Y. Corp. v New York State Dept. of Social Servs., 151 AD2d 675, 676; Matter of Camperlengo v Perales, 120 AD2d 883, 883-884, lv denied 68 NY2d 606).

Respondent's referral to OPMC of the 10 records submitted by petitioner for reenrollment purposes was not arbitrary and capricious and did not justify petitioner's refusal to provide the 25 records requested during the audit unless petitioner was assured that those files would not be similarly turned over to OPMC. Petitioner's enrollment status was terminated without cause based on the 10 files under 18 NYCRR 504.7 (a), which carried with it no stigma of a formal determination that he had committed unacceptable practices (see, Matter of Liberty Testing Lab v Perales, 188 AD2d 762; Matter of Bora v New York State Dept. of Social Servs., 152 AD2d 10, 14), and that termination was upheld (see, Matter of Tobon v New York State Dept. of Social Servs., 142 Misc 2d 310, supra); petitioner was not entitled to a hearing prior to that referral and that termination is not before this Court in this proceeding. More-

over, respondent is authorized to report information to OPMC "which reasonably appears to show that a [physician] is guilty of professional misconduct" (Public Health Law § 230 [11] [a]).

Finally, the penalty of exclusion from the Medicaid program for five years and restitution for all Medicaid services ordered during the audit was not arbitrary and capricious. Disclosure of medical records and cooperation with audits are fundamental conditions of the Medicaid program, and participation therein is a privilege (see, Schaubman v Blum, 49 NY2d 375, 379-380). The penalty reflects consideration of the factors enumerated in 18 NYCRR 515.4 (b), including petitioner's failure to demonstrate mitigating circumstances, and his willful and complete failure—despite considerable advance notice of the probable consequences—to cooperate with the audit and allow respondent to review the services for which Medicaid was paying. Accordingly, we find that the penalty does not shock one's sense of fairness and should be upheld (see, Matter of Pell v Board of Educ., 34 NY2d 222, 233).

We have examined petitioner's remaining contentions and conclude they were not preserved for judicial review or are without merit.

Weiss, P. J., Mikoll, Yesawich Jr., and Crew III, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.