■ In the Matter of RAÚL MORALES, Respondent, v RUSSELL SCHWARTZ, as Deputy Commissioner of the Division of Medical Assistance of the New York State Department of Social Services, et al., Appellants. — In a proceeding pursuant to CPLR article 78 to review a determination of the New York State Department of Social Services dated September 21, 1982, which denied petitioner's application for reinstatement to the medical assistance program, the appeal is from a judgment of the Supreme Court, Westchester County (Beisheim, J.), dated February 23, 1983, which vacated the determination and directed appellants to reinstate petitioner retroactive to September 21, 1982. Judgment reversed, on the law, without costs or disbursements, and petition granted to the extent that the determination of the New York State Department of Social Services is annulled, and the matter is remitted to appellants for further proceedings consistent herewith. Petitioner was permanently disqualified from the New York State Medical Assistance Program effective January 3, 1980 based upon his conviction for violation of section 3335 of the Public Health Law. The determination to disqualify petitioner was confirmed in *Matter of Morales v Bates* (80 AD2d 833). Effective July 29, 1981, the administrative regulations pursuant to which petitioner was disqualified were amended to provide for the discretionary reinstatement of excluded medical providers (18 NYCRR 515.19). In April, 1982, petitioner applied for reinstatement by the Department of Social Services. He alleged, *inter alia,* that his prior misconduct, prescribing Valium without conducting a physical examination, resulted from fatigue or negligence, his record has remained unblemished since his conviction, and he has "streamlined" his practice to avoid recurrence of the incident. In addition, petitioner averred that his license to practice medicine in New York has never been suspended, he received a certificate of relief from disabilities, and he continues to receive a controlled substance registration certificate from the Federal Government. Petitioner pointed out that he devotes himself to the care of indigents, receiving little or no compensation for his services. Upon the foregoing, petitioner asserted that his reinstatement would be appropriate, and that the Medicaid program would not be

harmed. Thereafter, petitioner's attorneys were informed by letter that his application for reinstatement contained no material which was not considered at the time of petitioner's disqualification and that additional facts should be submitted in support of the application. Petitioner did not submit anything further. His application was then denied "based upon the serious nature of the unacceptable practices which resulted in his disqualification and the failure of his application to demonstrate that the Medical Assistance Program would not be harmed by his reinstatement". Petitioner commenced this proceeding pursuant to CPLR article 78 to review the above determination, alleging that appellants arbitrarily and capriciously disregarded the facts set forth in his application as well as their own regulatory guidelines for reinstatement. The judgment appealed from vacated appellants' determination, granted petitioner's application, and directed that petitioner be reinstated retroactively effective September 21, 1982. Special Term held that it was improper to deny reinstatement based on the seriousness of the original charges against petitioner, that the reinstatement provision was designed to permit reinstatement upon a showing of good behavior, and that appellants' conclusion that petitioner failed to prove that the Medicaid program would not be harmed by his reinstatement was without sound basis in reason, inasmuch as petitioner had presented uncontroverted facts regarding his behavior and present professional status. The regulation in issue, 18 NYCRR 515.19, authorizes the Commissioner of the New York State Department of Social Services, in his sole discretion, to grant reinstatement (18 NYCRR 515.19 [b] [4]). The regulation provides that a petition for reinstatement will only be given consideration if it sets forth mitigating factors which indicate that reinstatement would be appropriate. Such factors include, but are not limited to, the following (18 NYCRR 515.19 [b] [3]): "(i) demonstration of the petitioner's good conduct and/or rehabilitation since the date that the petitioner was excluded from participation in the medical assistance program; (ii) proof that the New York State Board of Regents has authorized the petitioner to resume the practice of his profession; or (iii) proof that the petitioner has been granted an executive pardon by the Governor or has been issued a certificate of relief from disabilities or a certificate of good conduct by a lawfully authorized court of this State or the New York State Board of Parole." No petition may be granted, however, unless the petitioner proves that the Medicaid program would not be harmed by the requested reinstatement (18 NYCRR 515.19 [b] [5]). It is clear that in promulgating the above regulation, the Department of Social Services did not intend to relinquish its well-established discretion in the area of provider sanctions. We disagree with Special Term's finding that the regulation was designed to permit reinstatement upon a simple showing of good behavior. The regulation requires an applicant to demonstrate his good behavior and/or rehabilitation as a precondition to the consideration of his application (18 NYCRR 515.19 [b] [3]), and thereafter, to prove to the satisfaction of the commissioner that the Medicaid program would not be harmed by his reinstatement (18 NYCRR 515.19 [b] [5]). Petitioner submitted only conclusory allegations that he had reformed which, although uncontroverted, are insufficient to establish that the program will not be harmed by his reinstatement. Appellants may reasonably require a person seeking reinstatement to submit more than self-serving allegations in support of his application, since an excluded provider has no vested right to reinstatement (see *Schwartzberg v Whalen,* 66 AD2d 881) and since the applicant is usually the only person with knowledge of the facts bearing upon his reform. It was, therefore, error for Special Term to order petitioner's reinstatement solely on the strength of his uncontradicted allegations. Moreover, we disagree with Special Term's conclusion that the serious nature of an applicant's prior misconduct may not play a

role in denying his application for reinstatement. The regulation applies to persons "suspended; disqualified or otherwise excluded" from the Medicaid program (18 NYCRR 515.19). Thus, applicants for reinstatement necessarily will have committed acts of varying degrees of seriousness which warrant different sanctions. In determining whether or not to grant reinstatement in a particular case, it is clearly appropriate to consider the nature of the applicant's prior misconduct. In addition, we note that the serious nature of petitioner's offense was not the sole basis for the denial of his application. Nonetheless, it clearly appears that appellants totally disregarded certain mitigating factors set forth in petitioner's application and bearing on his reinstatement, demonstrated by their letter dated June 14, 1982 informing petitioner that his petition contained no material not previously considered at the time of his disqualification. Since petitioner did allege some new facts, e.g., that his record has remained unblemished since his conviction and that he has taken steps to avoid recurrence of the incidents which resulted in his disqualification, the matter should be remitted to appellants for further consideration. Moreover, petitioner should be given the opportunity to submit additional facts in support of his allegations of rehabilitation before his application is again reviewed. Damiani, J. P., Mangano, Gulotta and Brown, JJ., concur.